STATE of Tennessee, Appellee,

v.

**Harry Reece BUTTS, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Feb. 24, 1982.

Permission to Appeal Denied by Supreme Court May 10, 1982.

Rhona J. Cartwright, Asst. Atty. Gen., Nashville, D. Vance Martin, Asst. Dist. Atty. Gen., Knoxville, for appellee.

Robert S. Holland, Knoxville, for appellant.

OPINION

DAUGHTREY, Judge.

The appellant-defendant, Harry Reece Butts, was convicted of armed robbery and of assault with intent to commit first degree murder. He received consecutive sentences of 25 years and 10 to 25 years respectively. On appeal he contends that he should be granted a new trial because he was denied (1) a proper preliminary hearing and (2) discovery of police personnel files. We find no reversible error, and we therefore affirm the conviction.

A brief review of the trial evidence is necessary to a resolution of both issues raised on appeal. It showed that at 11:30 P.M. on June 15, 1980, a clerk at the Pantry Food Store in Knoxville was robbed by a lone gunman. The clerk's attention was first called to the robber because of his somewhat unusual garb: he was wearing a knit cap that "kind of fell over his face," dark sunglasses, and a "Hawaiian style shirt" of "flowery design" that was not tucked into his pants. The bandit approached the check-out counter with a six-pack of beer, stuck a pistol in the clerk's face, and demanded that he put all the money and food stamps from the cash register in the same sack as the beer. The robber then left the store on foot.

The clerk gave police a description of the robber as to race, build, age, and clothing. This information was broadcast by radio dispatch, and within several minutes various police officers responded to the call,

including Officer Dwight Whaley. Searching a wooded area near the scene of the holdup, Whaley saw a man crouched down as if to avoid discovery. When police searchlight beams hit him, the man began running, trailing money from a paper bag he held in his arms. During the ensuing chase, the suspect took cover and fired twice at Whaley, who returned two shots. One apparently struck its mark, for Butts was soon discovered hiding in the bushes, bleeding from a shoulder wound. He was wearing a Hawaiian shirt and was "within arms length" of a .32 caliber pistol. Nearby the police found a paper sack bearing the Pantry Store logo. In it were a floppy-brimmed knit cap, sunglasses, a six-pack of beer of the same brand purchased by the robber, various small bills, and food stamps imprinted on the back with the Pantry Store's identifying mark. Police immediately arrested Butts and charged him with armed robbery.

At trial, the defense rested without producing any evidence.

■ The defendant claims that the tape recording of his preliminary hearing was unintelligible and that he was therefore entitled to a new preliminary hearing. Central to his argument is the fact that his trial attorney had not been present at the preliminary hearing, while the same assistant district attorney who tried the case had been present at all stages of the prosecution. The defendant insists that his rights under Rule 5.1(a) of the Tennessee Rules of Criminal Procedure have thus been violated.

Rule 5.1 requires that proceedings at the preliminary hearing be "preserved by electronic recording or its equivalent" and "made available for listening to by the defendant or defendant's counsel to the end that they may be apprised of the evidence introduced upon the preliminary examination." This court has previously held, however, that the failure to provide a recording or its equivalent may constitute harmless error. *State of Tennessee v. Charles Thomas Taylor,* Court of Criminal Appeals at Knoxville, released April 14, 1981. In *Taylor,* the court found that the trial evidence

so conclusively showed Taylor's guilt that a record of the preliminary hearing could not have aided the defense.

The evidence in this case was likewise compelling on the question of the defendant's guilt. Moreover, the defendant's attorney had been afforded full discovery of the State's case and prior to trial had interviewed at least one crucial witness, the victim of the robbery. In his brief on appeal, the defendant has failed to indicate how he might have been prejudiced by the faulty recording of the preliminary hearing. There is, for example, no allegation of a material inconsistency between the trial testimony of the witnesses and any pretrial statements made by them. Under these circumstances, we hold that the Rule 5.1 problem in this case produced what is at most harmless error.

The defendant next argues that the trial court erred in denying his motion for access to the police personnel records of Officer Whaley. The motion included the following request:

The type of evidence desired is that which is material and/or relevant as to guilt and/or punishment of the accused, as well as to credibility of the officer in this matter. The nature of the information requested is any acts of misconduct by Officer Whaley, including but not limited to, over-aggressiveness, assaulted behavior or ethnic prejudice. The types of information desired are records of complaints, or other agencies or governmental entities; Investigation reports by Internal Affairs or other agencies within the Police Department of complaints or any other matter used to initiate an investigation; and, results and reports of disciplinary proceedings resulting from the above mentioned types of misconduct.

In an affidavit attached to the motion, defense counsel asserted that he had "reason to believe that there have been prior complaints concerning over-aggressiveness, assaulted [sic] behavior, and/or ethnic prejudice with regard to Officer Dwight Whaley." The attorney did not explain in the affidavit how he came to believe these complaints existed.

Reflecting a policy of broad and reciprocal discovery, Tennessee Rule of Criminal Procedure 16(a)(1)(C) permits the defendant to see papers and documents within the State's control that are material to defense preparation. Although no Tennessee case specifically allows a criminal defendant to discover police personnel records, one Tennessee case addresses a somewhat analogous problem. In *State v. Brown,* 552 S.W.2d 383 (Tenn.1977), the accused sought to defend an assault and battery charge by impeaching the credibility of the victim. The victim had a history of mental illness, and the defense attorney believed the victim's hospital records would reveal that she had suffered delusions of people attacking her. The court in *Brown* held that a defendant may have access to a victim's state mental hospital records if after an *in camera* inspection the trial court determines that the records would materially aid the defense.

Cases in other jurisdictions discuss requests for police personnel records in prosecutions for offenses involving violence against a police officer. These decisions seek to prevent imprudent exposure of police disciplinary records without denying access to material information. Courts generally allow either direct or *in camera* inspection of police personnel records when the defense claims the officer was the aggressor and the court finds that parts of the officer's personnel history (such as complaints of the officer's assaultive conduct which resulted in departmental sanctions) may be relevant to the officer's credibility or to the defendant's claim of self-defense. See e.g., *State ex rel. DeConcini v. Superior Court of Pima County,* 20 Ariz.App. 33, 509 P.2d 1070 (1973); *Hinojosa v. Superior Court of San Diego County,* 55 Cal.App.3d 692, 127 Cal.Rptr. 664 (1976); *State v. Pohl,* 89 N.M. 523, 554 P.2d 984 (Ct.App.1976). On the other hand, courts generally deny such discovery requests when the defense does not show that an inspection of the personnel records would yield material evidence. *See, e.g., United States v. Akers,* 374 A.2d 874 (Dist.Col.App.1977); *People v. Torres,* 77 Misc.2d 13, 352 N.Y.S.2d 101 (1973); *Vaughn v. State,* 269 Ind. 142, 378 N.E.2d 859 (1978). *See generally* Annot., 86 ALR3d 1170.

■ Considering the Tennessee policy of broad and reciprocal discovery reflected in Tennessee Rules of Criminal Procedure Rule 16 and in *State v. Brown, supra,* and considering case law from other jurisdictions, we adopt the following rule: Criminal defendants may not routinely have access to police personnel records, but upon a strong showing that the personnel records might contain information material to a defendant's case, the trial court should conduct an *in camera* inspection of the records and release to defendant those items the court deems material to the defense.

■ In the instant case, defense counsel asserted that Officer Whaley's personnel record might contain information relevant to Butts's claim of self-defense, to Whaley's credibility, or to Whaley's ethnic prejudice. The trial judge properly found, however, that because Whaley had responded to an armed robbery call, he had a right to protect himself and that Butts's self-defense claim was specious. In addition, the State's case does not rest on Whaley's credibility alone since the State introduced other evidence tending to show that Butts fired shots at Whaley. *State v. Brown, supra; People v. Puglisi,* 44 N.Y.2d 748, 405 N.Y. S.2d 680, 376 N.E.2d 1325 (1978). Finally, the defendant presents no basis for finding Whaley's alleged ethnic prejudice material to this case. Therefore, under the circumstances of this case, we conclude that the defendant has failed to demonstrate sufficient materiality to merit disclosure of police personnel records. It follows that the trial court did not err in its ruling on the related defense motion.

The judgment of the trial court is affirmed.

CORNELIUS, J., and WILLIAMS, Special Judge, concur.